## No. 4636.

SUCCESSION OF THOMAS HALE—On opposition to account of Executrix.

It is sufficiently clear from the tenor of the will on record, that the testator had the desire to give the seizin to the executrix. Any disposition or recommendation from the testator to his executor in regard to the mode in which his property is to be administered is a sufficient indication of his desire to grant the seizin. It is not necessary that the word seizin be inserted in the will to confer the power.

The executrix is entitled to credit for interest paid to procure extensions of mortgage notes, it not being shown that she had moneys in hand sufficient for the purpose of taking up the notes of the deceased when the renewals were made. It was important to the interest of the estate that they should be taken up.

The sum of $21,500 reported by the auditor in this instance, as amount of sales of property of the separate estate of the deceased during his last marriage and charged against his widow, was properly rejected by the court below, as there is no evidence to show that the proceeds of that property inured to the benefit of the community.

It is expressly announced by article 1749 of the Civil Code that "all donations made between married persons, during marriage, though termed *inter vivos*, shall always be revocable." The restoration by the wife to the husband of the various articles donated to her and the subsequent conversion of them by him for the uses and benefit of the community may be regarded as a revocation or an annulment of the donation.

Apart from the disability of the husband and wife to enter into a contract with each other, except when the law expressly permits it, the promise or engagement of the husband to return to his wife the value of the articles donated back to him, by replacing them with others of the same kind and of the like value, could only be regarded as an imperfect obligation at best, and one that can not be enforced by law. It did not have the binding force of a legal obligation against the husband and neither can it have against his heirs.

A donation made in money, in the form of the manual gift, is valid without the formality of a notarial act of transfer.

There is no foundation for the assertion that the provisions of article 1749 apply to donations by public act and not to manual gifts which require no formalities after delivery. This court is unable to discover in our code any exception to the rule laid down in article 1749.

It is contended that, if by the act of donation from the husband, the money became hers absolutely, then by operation of law, article 1753 of the Civil Code, the ownership of said money changed, and was vested in the heirs in consequence of the wife's second marriage. The court thinks that articles 1746, 1750 and 1752 must be construed together with article 1753, to which latter article the three former ones are subordinated, and that their operation is contingent upon the conditions expressed in the article 1753, which is not found in the Napoleon Code, but which was incorporated into our system of laws from the Roman law and Spanish Codes.

The attitude of the parties to this litigation would seem to present a case provided for by the article 1753 of our code. During the marriage large and valuable donations were made by the husband to the wife in the form of the manual gift. The husband died, leaving children by his marriage with the donee, who has contracted a second marriage, the children of the donor still living. But in this case the conclusion of the court is that the provisions of article 1753 can not be enforced, for the reason that the substance of the donation is no longer tangible nor susceptible of identification. The property, of which the ownership, under such circumstances, becomes vested in the children, must be the same property that was donated to the wife by the husband during the marriage.

In this case, the money constituting the particular donation under consideration, has long since been used by the executrix, the donee, for the benefit of herself and family. It is no longer *in esse* as to the rights of the opponents. The ownership of it can not be enjoyed by the children nor the usufruct of it by the mother, Hence the executrix can not be held liable for it.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J. Labatt & Aroni*, for executrix and appellee. *Alfred Grima, John A. Gilmore, Clarke, Bayne & Renshaw*, for appellees, heirs of Thomas Hale.

TALIAFERRO, J.  The widow and executrix of the decedent, filed a provisional account of her administration on the first of July 1870. A vigorous opposition was made to it by the heirs of the deceased, who. are the children of the executrix; one of them, a married woman of the age of majority, the others, minors represented by their tutor.  The objections set up against the account are very numerous, and a complicated litigation arose.  The investigation involved the examination of accounts and settlements of some intricacy, and the subject matter of the opposition was referred to an auditor.  A large mass of evidence was taken before him, and his report, when presented to the Court, was in part rejected, while other portions of it were approved, and to to the extent of the approval, became the basis of the judgment of the court.  The opponents appealed.  The executrix, in answer to the appeal, prays for various amendments of the judgment of the court *a qua.*

A supplemental provisional account was filed by the executrix on seventh January, 1873.  This was opposed by the heirs likewise; but the opposition was overruled by the court and the opponents seem to have acquiesced.

Thomas Hale, whose succession forms the subjet of this controversy, was twice married.  He left descendants only by the last marriage.  He left a will couched in the following terms :

"This is my last olographic will.  I, Thomas Hale, of the City of New Orleans, do hereby make this my last olographic will and testament, desirous that my heirs may avoid the annoyances of judicial intervention.  I do desire that an inventory be taken of all my property real and personal, immediately after my decease; that no sale or transfer be made thereof; that it remain undivided for the uses and benefit of my family during the life-time of my beloved wife Josephine Jones, and in case of her death before the majority of all my children, that no division thereof be made until the majority of the youngest of my children."

" Having been possessed of property at the time of my marriage with my present wife, Josephine Jones, and no inventory thereof existing, and having made no marriage contract or dower in her favor, and in order to avoid all differences of opinion and litigation that might arise as to the value thereof, it has been verbally agreed between my wife and myself that I would bequeath her one fifth of all my property, which I do hereby, subject to her relinquishment of any legal claim she would have upon the property acquired after her marriage; but in case of, any change of opinion by her or her heirs respecting the relinquishment aforesaid, then her claim to the community property can be ascertained. by reference to an act passed before F. Grima, notary in

the year 1838, when I married my first wife,-and the aforesaid fifth portion is null and void."

I give and bequeath unto the Boys' Male Orphan Asylum of this City (St. Mary), my dwelling house and premises at the Bay of St. Louis, State of Mississippi, and in case said property be sold or alienated before my death, then there shall be paid annually unto the trustees of said Asylum one thousand dollars for the term of five years after my decease, say $5000 in all. I bequeath the remainder of all my property after the aforesaid bequests be provided for, unto my lawful children then living at the time of the division of my property aforesaid, directed to be equally divided among them.

I do hereby appoint my wife Josephine Jones the natural tutrix and executrix under this will, relying on her good judgment and discretion in the administration for the benefit of herself and children. I do further appoint, as under tutors for my children, Thomas Gilmore and Patrick Irwin, both of this city, entertaining the highest regard for their honor and integrity. Signed, written and dated of my own hand, in the sixty-eighth year of my age, in good health and sound memory, this fourteenth day of November, in the year of our Lord 1865.

Signed,                               THOMAS HALE.

*Ne varietur.* New Orleans, June 13, 1867.

Signed,                               J. W. THOMAS, Judge.

On the twenty-sixth November, 1866, the testator, then at Paris, in France, where he died a few months afterwards, added a codicil by which he revoked the donation of property at the Bay of St. Louis, substituting the donation of $5000 in money payable annually in installments of $1000 each, and confirming in all other respects his will as at first written. The surviving spouse rejected the legacy and stood upon her rights as survivor in community.

In viewing the action of the court below in regard to the contestation that has arisen in the settlement of this succession, it will be proper to follow up the separate grounds of the opposition in the order in which we find them set out in the reasons of the judge *a quo* for the judgment rendered.

*First*—The commission of Hyland for the collection of the rents of houses, amounting to $8032 75, is opposed for the reason that no contract existed between Hyland and the deceased for the collection of these rents, during his lifetime and while in Europe; and that the executrix had no right to employ Hyland as collector at the expense of the succession. This objection was overruled. The deceased recommended his wife, executrix of his will, to retain the services of

Hyland in the settlement of his succession, and Hyland should not be considered merely as an ordinary agent.

*Second*—The heirs oppose the commission of the executrix on the ground that she had not the seizin of the property by the will. It appears, said the court, that it is sufficiently clear, from the tenor of the will, that the testator had the desire to give the seizin to the executrix. Any disposition or recommendation from the testator to his executor in regard to the mode in which his property is administered, is a sufficient indication of his desire to grant the seizin. That it is not necessary that the word seizin be inserted in the will to confer the power. This objection was overruled.

*Third*—Opposition is made to the payment of interest on renewal of notes as charged in the auditor's report, on the ground that the revenues of the estate were sufficient under a proper administration of the estate to satisfy the claims upon which interest has been paid. This objection was sustained.

*Fourth*—Opposition is made to the auditor's report in relation to the separate estate of Thomas Hale before his second marriage, the opponents claiming a larger amount of the property than is allowed in the report. The auditor's report on this subject is sustained, except, however, the item of $21,500, amount of sale of two pieces of property sold by Thomas Hale during his second marriage.

*Fifth*—The heirs opposed the claim of the widow and executrix for $20,472 50, on the ground that this sum was the amount of donations made from time to time by Thomas Hale to his wife, which donations they contend were revoked by the donor. The auditor in his report rejected this claim, but the court overruled, as to this item, the auditor's report as well as the opposition of the heirs.

*Sixth*—The auditor's report is opposed by the executrix as to his rejection of her claim for $28,000, proceeds of a bill of exchange donated to his wife by the deceased in the form of a manual gift. The rejection of this claim by the auditor is sustained by the court, on the ground that a bill of exchange is an incorporeal right, and could only be transferred by donation by an act passed before a notary and two witnesses.

*Seventh*—The usufruct of the community property allowed to the widow by the auditor is opposed by the heirs, on the ground that the testator has disposed of his property by will. The court sustained the auditor's report and overruled the opposition of the heirs.

*Eighth*—The court passed upon the two items of the accounts not reported on by the auditor, one for 21,000, the other $6000, charged as community funds used in improving the seperate property of Hale. The court concluded from the evidence, that at the time of the disso-

lution of the marriage, the increased value of the lots on Magazine street from the expenditure of community property in improving them amounted to $10,000, and that of the lots on Julia street to $4000, making $14,000, and reduced the charge to that sum.

We concur with the judge *a quo* in his ruling in regard to the pre-ceding items under the numbers 1, 2, 4 and 8. We dissent from his disposal of the items 3, 5 and 7.

*The item* 3—We think the executrix entitled to credit for interest paid to procure extensions of mortgage notes, it not being shown that she had revenues in hand sufficient for the purpose of taking up the notes when the renewals were made, and it was important to the interest of the estate that they should be taken up.

*The item* 4—The sum of $21,500 reported by the auditor, amount sales of property of his separate estate during his last marriage and charged against the widow, was properly rejected by the court, as there is no evidence to show that the proceeds of that property inured to the benefit of the community.

*Item* 5—The claim set up by the executrix to be reimbursed the sum of $20,472, is founded upon the promise of Thomas Hale to furnish her with jewelry and other valuables to that amount, in lieu of property of that kind previously given to her, which was sold and the money appropriated to his use. The testator was possessed of an ample for-tune. He owned in New Orleans at the time of his second mar-riage a large amount of real estate, the rental of which formed per-haps the greater part of his income. He was at one time, in connec-tion with others, engaged in large mercantile operations in Mexico. He lived in a style commensurate with his abundant means. From time to time during his last marriage he made donations to his wife of the character and in the form of manual gifts. These consisted of money and objects of elegance and taste, as costly paintings, statuary, jewelry and silver ware. At one time, from the casualties of trade he found himself temporarily embarrassed and heavily pressed for money to meet his engagements and to sustain his credit. In this emergency his wife willingly and promptly parted with the valuable presents re-ceived from her husband to be converted into money for his relief. It is shown to have been the purpose of Mr. Hale to compensate his wife for this sacrifice by bestowing upon her other articles of the same kind and like value to be selected by her in Europe during their last trip to that continent. His death, it seems, frustrated this purpose. Soon after their arrival in Europe he was taken sick and died, as we have seen early in the year 1867. In allowing this claim we think the court erred. It is expressly announced by article 1749 of the Civil Code, that "all donations made between married persons during marriage, though termed *inter vivos*, shall always be revocable."

The restoration by the wife to her husband of the various articles donated to her and the subsequent conversion of them by him for the uses and benefit of the community, may be regarded as a revocation or an annullment of the donation. But it is contended that there was no revocation of the donation, as it was the purpose and intention of the donor to reinstate to his wife the value of the articles donated, in others of the same kind and of like value; that he had promised so to do and was prevented alone by death from fulfilling this engagement; that his succession is bound to fulfill it. Apart from the disability of the husband and wife to enter into a contract with each other, except where the law expressly permits it, the promise or engagement insisted upon could only be regarded as an imperfect obligation at best, and one that can not be enforced by law. It did not have the binding force of a legal obligation against the husband and neither can it have against his heirs. The opposition to this claim must be sustained and the claim rejected.

*Sixth*—The rejection by the auditor of the claim of the executrix against the succession, of $28,000. The court sustained the rejection on the same ground that the auditor did; that the donation consisted of a bill of exchange for that sum, and the bill of exchange being an incorporeal right could only have been donated by act before a notary and two witnesses. Civil Code art. 1536. There is much said in the voluminous testimony of this large record in reference to the giving of this sum of $28,000. We conclude from the evidence that the proceeds of a bill or bills of exchange were given, and not the bill itself. The testimony of the sister of the executrix is positive on the subject, and her statement is corroborated by other testimony. She states that Mr. Hale handed to her a package containing twenty-eight United States Treasury notes, of one thousand dollars each, which he declared to be Mrs. Hale's money, and which witness delivered to her. We think the evidence establishes that the donation was made in money, in the form of the manual gift, and that a notarial act of transfer was not requisite to its validity. Civil Code, art. 1539.

On the part of the heirs it is contended that these funds belonged to the community, and they require the executrix to bring them back as assets of the succession. They moreover hold that if, by the act of donation, the money became hers absolutely, then, by operation of law, the ownership of it changed, and was vested in the heirs; this change resulting from her second marriage. Civil Code, article 1753. This article reads: "If a person who marries a second time, has children of his or her preceding marriage, he or she can not, in any manner, dispose of the property given or bequeathed to him or her by the deceased spouse, or which came to him or her from a brother or

sister of any of the children which may remain. This property be-
comes by the second marriage, the property of the children of the
preceding marriage, and the spouse who marries again, only has the
usufruct of it."

The counsel for the executrix maintains that the provisions of arti-
cle 1749 apply to donations by public act and not to manual gifts
which require no formalities after. delivery, and he quotes several
French authorities. We are unable to discover in our code any excep-
tion to the rule laid down in article 1749 declaring that "all donations
between married persons during marriage shall always be revocable."
The articles 1746, 1750 and 1752 must be construed together with
article 1753, to which latter article the three former ones are subordi-
nated and the operation is contingent upon the conditions expressed
in the article 1753. That article was incorporated into our system of
laws from the Roman law and the Spanish codes. It is not found in
the Napoleon Code, but is derived from the Justinian Code. De
secundis nuptiis. Title 1, Novellæ Constitutiones 22, chapter 23.

Si vero sit soboles et filios exhonoratos viderit lex, tunc omni largi-
tate a viro ad eam veniente eam secundum proprietatis privat partem,
solum ei derelinquens usumfructum. * * * * * * Et generaliter
dicendum est, quod omnis eam deserit proprietatis modus in iis, quæ a
priore viro in eam venerunt.

"But if the law discover that children and offspring are in this
manner dishonored, then it deprives her, the mother, as to the matter
of ownership of all munificent donations coming from the husband to
her, leaving to her only the usufruct. * * * * and
generally it is said that every form of ownership leaves her in those
things which came to her by a former husband."

"Secundarum nuptiarum damna incommodaque aut communia sunt
utriusque conjugis aut uxoris propria. Et illa quidem ad lucrorum
nuptialium spectant jacturam. Vocamus autem lucra nuptialia: quæ-
cunque ex ratione qualicunque, ad matrimonii tamen spectante causam,
alter conjugum ex alterius bonis lucratus est, sive sponsalitia largitate
id factum sit, sive conjugali donatione, itemque sive testamento
lucrum ei obvenerit, sive lege, quo in genere etiam sunt, quæ propter
divortium alteri eripiuntur, alteri adjiciuntur." Muhlenbruch Doc-
trina Pandectorum, sec. 542.

"And indeed they (the losses and inconveniences of second mar-
riages) contemplate the loss of nuptial gains—and we call nuptial
gains whatever from any source, having reference to the purpose of
marriage, enriches one of the spouses from the property of the other,
whether that be effected by nuptial gifts or conjugal donation; like-
wise whether it be denied to the wife by testament or by law. In this

class also are reckoned the things which on account of divorce are taken away from one of the parties and transferred to the other.''

The attitude of the parties to this litigation would seem to present a case provided for by the article 1753 of our code. During the marriage large and valuable donations were made by the husband to the wife, in the form of the manual gift. The husband died, leaving children by his marriage with the donee, who has contracted a second marriage, the children of the donor still living. But in this case we conclude that the provisions of that article can not be enforced, for the reason that the substance of the donation is no longer tangible nor susceptible of identification. The property, the ownership of which, in such a case, becomes vested in the children, must be the same property that was donated to the wife by the husband during the marriage. The money constituting the particular donation under consideration, has long since been used by the executrix for the benefit of herself and family. As regards the rights of the opponents, it is no longer *in esse*. The ownership of it can not be enjoyed by the children nor the usufruct of it by the mother. We conclude, therefore, that the executrix can not be held liable for this sum of $28,000, as contended for by the opponents. The judgment of the court below in regard to this item is not sustained. See 13 An. p. 143, Neely v. Stokes; 10 An. 679, Cook v. Doremus, and various cases there cited.

The counsel for the executrix, in their answer to the appeal, allege that through error and inadvertence of the auditor the executrix did not receive credit for $12,212 38, excess in amount of disbursements on account separate estate of Hale over receipts from his separate estate. We conclude from the auditor's statement made twenty-seventh May, 1872, and filed subsequently to his report, that there was error in the judgment as alleged, arising from error and omission on his part. The judgment must be amended, allowing the credit claimed. They claim a credit for $1282, amount of rent collected by Hale for Mrs. Jernsan, and paid by executrix after Hale's death, and which it is alleged she omitted to enter as a debit on the account, the fact of its being a debt of the community not having been known until stated by Hyland in his testimony. It appears to stand upon the same basis with that of the debit of James Hale, rent $7000 placed on the tableau and duly audited and allowed.

This credit must be allowed. They claim credit also for $677, amount of various disbursements set forth in document marked C and not entered upon the account of the executrix, and which should be added thereto. Copied from the ten pages of Book of Expenditures marked N. This credit should also be allowed.

A further credit of $1059 15 is contended for in favor of the execu-

trix for the reason that, from the corrected report of the auditor fixing the amounts received by the executrix as shown by the rent rolls of Hyland, various sums amounting to $1059 15 were not deducted as they should have been, the executrix having accounted for these items on her tableau. The claim to this correction we are satisfied is well founded and it must be allowed.

A further credit of $2165 is claimed by the executrix as having been improperly charged by the auditor against her, the amount being for rents collected by Hyland and not paid over to Mrs. Hale. Both the executrix and Hyland say that this sum of $2165 was not paid over to her. The auditor states in his evidence accompanying his corrected report that there was evidence that Hyland had not paid over this sum of $2165 to Mrs. Hale, but, as that sum was for rents and they were collected by Hyland as the agent of Mrs Hale, he charged them against her. We have not found from the evidence that the auditor was in error in debiting this sum to Mrs. Hale. The credit for this sum we conclude should not be allowed.

It is therefore ordered and adjudged that the judgment of the district court be amended as herein altered and modified, and as herein before specified, and as so amended it be affirmed. All costs to be paid by the succession.

Rehearing refused.