(80 South. 186)

· No. 23054.

Succession of THOMAS.

THOMAS et al. v. THOMAS et al.

(Nov. 4, 1918. Rehearing Denied Dec. 2, 1918.)

*(Syllabus by the Court.)*

1. MARRIAGE ⊸11—VALIDITY—SECOND MARRIAGE.

A marriage which has not been dissolved by death, or by divorce, remains a valid, existing marriage; and neither party thereto can contract a second marriage.

2. MARRIAGE ⊸50(1)—EVIDENCE.

The evidence of a second marriage, where a preceding marriage has not been dissolved by divorce, must be clear and positive.

3. MARRIAGE ⊸40(6)—PRESUMPTION.

A divorce will not be presumed, where the evidence is positive that it does not exist, and the party alleging it fails to produce any testimony concerning it, except the alleged declaration of the deceased spouse to that effect during his lifetime.

4. MARRIAGE ⊸40(5)—PRESUMPTIONS—GOOD FAITH.

Good faith will not be presumed on the part of a mature woman who enters into a marriage with a man whom she knows to be already married, when she has no evidence of a divorce beyond the assertion of the man whom she says she has married.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by Mrs. Annie Brown Thomas and others against Mollie M. Thomas and others. From the judgment, plaintiffs appeal. Reversed, and judgment entered for plaintiffs.

Smith & Carmouche, of Crowley, for appellants.

Philip S. Pugh, of Crowley, and W. R. Blain, of Beaumont, for appellees.

SOMMERVILLE, J. Joseph J. Thomas died in the parish of Acadia, where he left an estate. Mrs. Annie Brown Thomas, of North Carolina, his wife, and Miss Annie Thomas, his daughter, caused the necessary probate proceedings to be instituted in Acadia, and asked that the Crowley Bank & Trust Company be appointed administrator. That application was opposed by Mrs. Mollie Martin Thomas, claiming to be the widow of · the said J. J. Thomas, and by Roy Thomas, claiming to be the son of said union.

Mrs. Mollie Martin Thomas, in her petition, "denies the marriage of her said husband with the said Mrs. Annie Brown." She further averred that—

"she married the deceased, J. J. Thomas, in good faith and without the slightest knowledge on her part of any prior marriage by him, * * * the said marriage taking place in Lake Charles, La., many years ago, and that they have lived together as man and wife ever since that time; two children, Roy Thomas, a major, and J. Grey Thomas, a minor, being the issue of the marriage aforesaid."

The administrator, the Crowley Bank & Trust Company, having sold the property and paid the debts, called upon the two plaintiffs and the two opponents to settle their rights contradictorily with each other, so that it could distribute the assets of the said estate to the proper parties.

Mrs. Annie Brown Thomas and her daughter answered the petition of the administrator, claiming the whole estate as the widow and child of the deceased, and they opposed any claim set forth by the others. Mrs. Mollie Martin Thomas, individually and as guardian of her minor son, J. Grey Thomas, issue of the union between the said Mrs. Mollie Martin Thomas and the deceased, and Roy Thomas, also claiming to be a son of said union, answered the petition of the administrator, denying the claims of the others —Mrs. Annie Brown Thomas and Miss Annie Thomas.

Mrs. Mollie Martin Thomas further answered that:

"She was married to J. J. Thomas in good faith and without any knowledge that he was a

married man, if so he was, which is emphatically denied, in the fall of 1893, at Lake Charles, Louisiana. ⁂ ⁂ ⁂"

Further, that all the property left by J. J. Thomas was acquired during the community existing between her and the said Thomas, and that she, together with her two children, are entitled to be recognized as the widow in community and sole heirs of the said J. J. Thomas.

"Respondent specially denies that the said J. J. Thomas was ever married to the said Mrs. Annie Brown Thomas, claiming to be the widow of the said J. J. Thomas, deceased, or, if he was, which is denied, that he was divorced from her long before the marriage of the said J. J. Thomas to your respondent."

She claimed to be, if not the real wife, then the putative wife, of J. J. Thomas, with all the legal effects springing from such union, and she asked that her two children be recognized as the children of said union, with all the civil effects springing from the alleged marriage. In the alternative, she claimed that, if the court should find that J. J. Thomas had been legally married and not divorced at the time that she married him, then that she was entitled to one-fourth of the estate of her said husband as a widow in necessitous circumstances.

There was judgment entered in the following words:

"The court having orally assigned that it was of the opinion that both Mrs. Annie Brown Thomas and Mrs. Mollie Martin Thomas were the legal wives of the deceased, and no evidence showing that Mrs. Annie Brown Thomas was ever divorced, and that they are, therefore, both entitled to something, it is therefore, for the said reasons and because the law and the evidence are in favor thereof, ordered, adjudged, and decreed that there be judgment herein declaring them both the legal wives of J. J. Thomas, deceased, and both entitled to share equally in the estate, and the Crowley Bank & Trust Company is ordered to carry out the provisions of this decree after paying all costs herein."

J. J. Thomas could not have left two legal wives at the date of his death. His marriage to Mrs. Annie Brown Thomas had not been dissolved by divorce: and he could not have entered, and did not enter, into a second marriage with Mrs. Mollie Martin Thomas.

Mrs. Annie Brown Thomas and her daughter have appealed; and Mrs. Mollie Martin Thomas, individually and as tutrix, and her son, have asked for an amendment of the judgment appealed from.

The marriage of J. J. Thomas and Mrs. Annie Brown Thomas has been abundantly proved, and that marriage has not been seriously contested in this court. The evidence conclusively showed that Mrs. Annie Brown Thomas and her daughter, Miss Annie Thomas, were the widow and child of J. J. Thomas.

Mrs. Mollie Martin Thomas and her son present the following proposition of law:

"That the burden of proof after a prior marriage has been proved rests upon the first wife to show that there has been no divorce, and this burden has never been discharged."

Several cases are referred to on the brief, which may support the proposition advanced; but they are not in line with the jurisprudence of this state and of many other jurisdictions. In the first place, Mrs. Mollie Martin Thomas, in our opinion, has failed to prove her marriage to J. J. Thomas. She, alone, testifies to the marriage. No witness was produced on the trial who knew of the marriage, except by the announcement of the parties themselves that they had been married. According to Mrs. Mollie Martin Thomas' testimony, she and Mr. Thomas had been friends for many years, first in the little village of Point Clear, Ala.; and afterwards they corresponded for many years. In 1893, she says, Mr. Thomas proposed that she leave her home in Pensacola and go to New Orleans, where he would meet her, and that they would take a trip to Chicago to attend the World's Fair. She further says that she and a female friend, who is now dead, went to New Orleans and met Mr. Thomas, who

had gone from Crowley, La., his home; that they three went to Chicago, where they spent two weeks: that they returned to Louisiana, and, on the suggestion of Mr. Thomas, she went to Crowley with him, and her female companion returned to Pensacola; that she went to Crowley merely to look at the country, to see how she liked it, and without any thought of marrying Mr. Thomas; after two days, they left Crowley and went to Lake Charles, and were married by a justice of the peace, in the presence of two male friends. The witness has no marriage certificate, and never had any; she does not remember the name of the justice of the peace who performed the ceremony, or the names of the two witnesses. She does not remember the name of the hotel at which they stopped after the ceremony. She simply says that the day after the ceremony they returned to Crowley and announced to Mr. Thomas' friends that they were husband and wife. It is shown by witnesses that the couple were received by the people of Crowley as husband and wife, that they lived together as such, and that she bore him two children. It was further shown that the records of Lake Charles were burned, and that the names of the two justices of the peace there in 1893 could not be obtained. It is unfortunate if the couple went to Lake Charles, where the records have been burned, when they might have been accommodated at some place much nearer to Crowley.

This evidence is not sufficient to base a judgment declaring that J. J. Thomas and Mrs. Mollie Martin Thomas were married.

The court said in the case of Powers v. Charmbury's Ex'rs, 35 La. Ann. 630:

"In the interest of persons who were the issue of marriages of which no direct proof could be adduced, and in the interest of legitimacy, courts have somewhat relaxed the rigor of the precept, and have sanctioned the rule which allows the proof of marriage by reputation, long cohabitation, and by other circumstantial evidence. But such evidence must show that the beginning of the relations between the parties must have been characterized by the free consent of the parties to contract the obligations and to assume the responsibilities of marriage; and the evidence must exclude the idea that the union began and that the parties were drawn together merely through the promptings of sensuality. Such conditions, even when followed by long cohabitation, although openly or publicly acknowledged, can result in nothing but concubinage, the parent of bastardy, the immoral impediment to marriage, and the fruitful source of shame and dishonor."

In the Charmbury Case, just referred to, there was judgment rejecting the demand of her who claimed to be the legitimate wife of the deceased, Charmbury. And the decision in that case was referred to with approval in Green v. New Orleans S. & G. I. R. Co., 141 La. 120, 127, 74 South. 717.

Mrs. Mollie Martin Thomas is the only witness who testifies to the divorce of Thomas from his first wife. She alleged in her first petition that Thomas had never been married to the plaintiff in the cause. She subsequently alleged that, if married, then that he and his first wife had been divorced; and on the trial she testified that Thomas had told her that he had been divorced from his wife. These statements are irreconcilable, and they weaken the testimony of the witness.

The evidence is abundant in the record to show that Mrs. Mollie Martin Thomas knew of the marriage of J. J. Thomas to his first wife. She testifies that she was born in 1867, and that she was about 16 years of age when she went to Point Clear, Ala., to live with her parents, which was a village of some 200 inhabitants. This was about one year before the separation of J. J. Thomas and his wife, Mrs. Annie Brown Thomas, which took place in the little town of Battle Wharf, about one mile from Point Clear, in the year 1883. (These two places are mere boat landings, called by different names.) Her associates at that time, who testified in the case, and whom she says were "boys and girls together" with her, testify to the great scandal

which separated Mrs. Annie Brown Thomas from her husband; and it is incredible of belief that Mrs. Mollie Martin Thomas did not know of the marriage, the separation, and the scandal in so small a place as Point Clear or Battle Wharf. She became quite friendly with Thomas, and one of her friends testified that she upbraided her for keeping company with a married man. He became a day boarder in her father's house after his wife left him, and she must have known him well.

The friendship continued until the time of the trip to the World's Fair, already referred to, and the alleged marriage in Lake Charles. They corresponded regularly. She knew that Thomas made a false statement to her, if he ever made such statement, when he said that he had been divorced from his wife. Her excuse for not making inquiry into the truth of that statement is insufficient, and carries no weight. She says that it was not her business, and she paid no attention to it. She was at the time of the alleged marriage 26 years of age, working for a living, going from place to place, and she knew that it was her business not to marry a married man, who was not divorced. She knew Mr. Thomas' brother, relatives, and friends, and she could have easily found out his status in society, if she had chosen to do so. It will not be presumed that Mr. Thomas, who is represented to have been a man of education and wealth, would have committed the crime of bigamy, and subjected himself to prosecution therefor. The record does not contain a suggestion of why he should have committed bigamy.

The alleged information coming from such a source cannot have any effect on the court. With reference to a similar question in Succession of Taylor, 39 La. Ann. 823, 828, 2 South. 581, 583, the court said:

"Confessedly she received no such information from anybody else, and her case depends upon the legal conclusion that such a circumstance is sufficient to show her belief in good faith in the existence of a divorce. If such trust can be placed in the declaration of the man who seeks to deceive a woman into a reprobated marriage, it would be difficult to conceive of a case in which the woman could not be held to have acted in good faith. Such a conclusion would open the floodgates of legalized concubinage, and the courts in their eagerness to protect the innocent offspring of null marriages would thus lend a helping hand to the destruction of the respectability of society by sapping the only safe foundation of the purity of the family."

The recklessness of Mrs. Mollie Martin Thomas in her venture with J. J. Thomas shows her to have been quite indifferent as to her own status in society. The mere announcement by herself and J. J. Thomas that they were husband and wife was apparently sufficient in the small town of Crowley to gain them recognition as such, but it is not sufficient upon which to base a judgment of court.

[4] The court is asked to presume that there was a divorce between J. J. Thomas and his wife, Mrs. Annie Brown Thomas. But the court cannot presume such to have been the case, in view of the testimony of Mrs. Annie Brown Thomas that she had never been divorced from her husband, and in the absence of all testimony that there was a divorce. There are some authorities to the effect that such a presumption will be found under certain circumstances. But we do not think that they extend to conditions found in this case, where it has been proved that there was no divorce.

With reference to one of those decisions, Cole v. Cole, 153 Ill. 585, 38 N. E. 703, where it is said, "Some qualification is to be placed on the doctrine of presumption of divorce to sustain second marriages," Judge Freeman, in 89 Am. St. Rep. 203, in a note, says:

" * * * 'Great injustice may be done an innocent wife through the willful wrong of her husband. She, it may be said, remains true to her marriage vows. He deserts her without cause, goes to a foreign country and contracts a second but void marriage. She may be, and

generally is, in such a case, powerless to prove that he has not, in some jurisdiction, obtained a divorce. Shall she, upon a mere presumption of his innocence, be deprived of all her right as a wife or widow because she cannot produce such negative proof? We do not think a fair construction of our decisions could logically lead to such a result. * * * Suppose, as in this case she did, the wife proves her marriage; that she in no way violated her marriage obligations; that her husband, without cause, deserted her; that she had no knowledge of his second marriage until after his death; that she had no personal knowledge of his having obtained a divorce, and her marriage was never dissolved in the jurisdiction where she lived when he deserted her, and where she continued to live to the time of his death—would not these facts, in the absence of all counter testimony, afford reasonable ground for presuming no divorce was obtained?' We have no doubt but that they would, and venture the opinion that a much weaker state of facts would be sufficient. Suppose he himself sets up a divorce from his first wife in justification of his second marriage. Would not the burden be upon him, in the first instance, to establish a fact so peculiarly within his knowledge, the negative proof of which, from the very number of jurisdictions in which he may have secured the divorce, amounts to a practical impossibility?

"To our mind, the vice of the principal case and of others like Alabama, etc., Ry. Co. v. Beardsley, 79 Miss. 417, post, p. 660, 30 South. 660 [89 Am. St. Rep. 660], is that they not only make a bigamous marriage apparently valid, but point out no means by which its invalid or unlawful character may be established. Even if it be true, and so nearly, if not all, of the cases maintain, that the existence of a prior marriage and the continued life of both parties thereto do not create any presumption of the invalidity of a second marriage by one of them, and further, that the presumption of the validity of the second marriage still prevails, though the spouse who is not a party to it does not know of any proceedings for a divorce, how can the negative, of want of divorce, be proved? Such divorce might have been granted by the courts of any state or country in which the person contracting the second marriage might at any time, after contracting it, have been a resident, and such being the case, we do not understand how the absence of a divorce can be established except by evidence showing all the states and countries in which he has so resided, and that none of the courts of any of them competent to grant him a divorce had in fact done so. To do this, a search must be made of the records of all these courts, and some

competent evidence adduced that none of them had undertaken to dissolve the first marriage. The production of all this evidence must ordinarily be impracticable, if not impossible, and the final result seems to be that these decisions, if followed to their logical conclusion, create presumptions, in the attempt to support marriages, which are potent to overthrow a moral and valid marriage to the end that an immoral and bigamous relation may be rendered unassailable, at least in any civil action."

Again, on the same point, in Turner v. Williams, 202 Mass. 500, 89 N. E. 110, 24 L. R. A. (N. S.) 1199, 132 Am. St. Rep. 511, the Massachusetts Supreme Judicial Court say:

"The unsoundness of such a contention becomes apparent when applied baldly to every conceivable state of facts. A marriage could not be ruled as a matter of law to be valid by reason of the presumption of innocence, if other evidence showed that a month or a day before its solemnization one of the parties was living with a legal and youthful spouse of good health and nondangerous employment. The law jealously regards the marriage relation and makes reasonable assumptions in its favor, but it has no special regard for second in preference to first marriage. * * * Circumstances may exist, which would make reasonable the inference of a divorce. But there is no inflexible rule by which it can be invoked to protect subsequent nuptials."

[1-3] The Code declares (article 93):

"Persons legally married are, until a dissolution of marriage, incapable of contracting another, under the penalties established by the laws of this state."

As J. J. Thomas and Mrs. Annie Brown Thomas were legally married, and their marriage has not been dissolved, J. J. Thomas was incapable of contracting another marriage; and we do not think that the evidence in this case shows that he attempted to do any such thing.

Indeed, we find the declaration made by J. J. Thomas in an act of sale, made in 1915, that Mrs. Annie Brown Thomas was his wife; and the notary, who lived in Crowley, and before whom J. J. Thomas signed the act, testified that Mr. Thomas told him that she was his wife at that time.

Our conclusions are that J. J. Thomas and Mrs. Annie Brown Thomas were legally married, and that Miss Annie Thomas is the offspring of that marriage, and, as such, they are entitled to his estate.

We further conclude that Mrs. Mollie Martin Thomas knew of the marriage of J. J. Thomas to Mrs. Annie Brown Thomas, and that that marriage had not been dissolved by divorce, and that when she and J. J. Thomas announced themselves in the town of Crowley as husband and wife she was not acting in good faith, and that she is not entitled to any of the benefits resulting from a putative marriage.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there be judgment in favor of Mrs. Annie Brown Thomas and Miss Annie Thomas, rejecting the demands of Mrs. Mollie Martin Thomas and Roy Thomas, and that Mrs. Annie Brown Thomas and Miss Annie Thomas be recognized as the surviving spouse in community and the sole heir of J. J. Thomas respectively, and entitled to be put into possession of his estate; the costs of appeal to be paid by Mrs. Mollie Martin Thomas and Roy Thomas, and the costs of the district court to be paid by the succession.

O'NIELL, J., takes no part having been absent during the argument.

PROVOSTY, J., absent on account of illness, takes no part.