38 So.2d 502

FUNDERBURK v. FUNDERBURK.

No. 38672.

Jan. 10, 1949.

John R. Hunter & Son, of Alexandria, for plaintiff-appellant.

John H. McSween, of Alexandria, for defendant-appellee.

FOURNET, Justice.

The plaintiff, Mrs. Jessie W. Funderburk, alleging that she is the surviving widow of Edward Henry Funderburk, instituted this

suit against Victor Barnes Funderburk, son of the deceased and executor of his succession, seeking to have a Buick automobile and certain household furniture listed on the inventory as belonging to the succession decreed to be her separate property and also to have her right to a half of the property acquired during the marriage, including amounts spent in repairing and improving certain immovable property of the decedent, recognized. These demands were resisted by the defendant on the ground that the plaintiff had never been legally married to the deceased since at the time their marriage was contracted the deceased was not legally divorced from his first wife, his purported divorce having been secured through fraud and deceit and in contravention of law. The trial judge, being of the opinion that the divorce was a nullity and that the marriage between the plaintiff and the deceased had been contracted in bad faith and was, therefore, null and void, producing no civil effects, rendered judgment rejecting the plaintiff's demands. She is appealing.

The undisputed facts of the case as reflected by the record are that the deceased married Cynthia Calhoun on March 16, 1910, and established their matrimonial domicile in Rapides Parish. Six children were the issue of their marriage. In 1922, under judicial decree, Cynthia Calhoun was formally committed to the Louisiana Hospital for the Insane at Pineville, Louisiana (now the Central Louisiana State Hospital), in which institution she still remains. Shortly after her commitment, in 1923, Funderburk employed the plaintiff to keep house for him and to care for his children. At that time she, with her husband and minor child, moved into his home. In 1925, Funderburk, alleging himself to be a resident of Avoyelles Parish, although the record shows he was then residing at his home in Pineville, Rapides Parish, instituted suit in the judicial district court for that parish seeking a divorce from his wife on the grounds of adultery, and he secured his decree of divorce after the proceedings had been carried on contradictorily with a curator ad hoc appointed by the court upon Funderburk's representation that his wife was an absentee of the state whose last known address was Beaumont, Texas. In 1934, after the plaintiff had secured a divorce from her husband on the ground of living separate and apart for four years, the deceased secured a marriage license in the Parish of Grant and was there married to the plaintiff. Thereafter, they continued to live together as man and wife in Rapides Parish until Funderburk died there in the fall of 1946.

In the light of the foregoing, the plaintiff concedes, as of necessity she must, that the divorce secured by Funderburk was a nullity. It is her contention, however, that as a putative wife, having been in good faith at the time she contracted the marriage with the decedent, she is, under the provisions of the Revised Civil Code, en-

titled to the civil benefits flowing from such a marriage.

"The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith." Article 117. But, "if only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor and in favor of the children born of the marriage." Article 118.

▇▇▇▇ The good faith referred to in these articles means simply the honest and reasonable belief that the marriage at the time of its confection was a valid one. Smith v. Smith, 43 La.Ann. 1140, 10 So. 248; Succession of Marinoni, 183 La. 776, 164 So. 797; Succession of Chavis, 211 La. 313, 29 So.2d 860; Howard v. Ingle, La. App., 180 So. 248. The burden of proving a charge of bad faith on the part of a marriage contractant rests squarely upon the person making the charge (Succession of Navarro, 24 La.Ann. 298; Macaluso v. Succession of Marinoni, supra; Howard v. Ingle, supra), and if there be any doubt as to the good faith of the parties, it is to be resolved in favor of good faith. Jones v. Squire, 137 La. 883, 69 So. 733. The innocent party to a bigamous marriage is held to be in good faith so long as he or she has no certain knowledge of any impediment thereto. Patton v. Cities of Philadelphia & New Orleans, 1 La.Ann. 98; Ray v. Knox, 164 La. 193, 113 So. 814.

▇▇ As was very aptly pointed out in Succession of Chavis, supra [211 La. 313, 29 So.2d 863], what constitutes good faith "is not an absolute quality but is relative, and depends ultimately upon the facts and circumstances in each individual case."

It is the plaintiff's contention that the defendant has failed to sustain the burden that is his of establishing her bad faith. The defendant, on the other hand, in his attempt to establish the bad faith of the plaintiff argues that it is "reasonable to assume that plaintiff, living as she did in decedent's home from 1923 until 1934 and coming into daily contact with him and with his children, had some knowledge of the circumstances under which decedent had obtained the void decree of divorce against his wife," sufficient, at least, to "put her on her guard." As further evidence of her bad faith, he points out that at the time the parties undertook to contract their marriage, they went into a parish other than that of their domicile and secured a license and had the ceremony performed, citing in support of this contention the cases of Thomas v. Thomas, 144 La. 25, 80 So. 186, and Prieto v. Succession of Prieto, 165 La. 710, 115 So. 911.

These cases are only authority for the proposition that the mere assertion by the man to the woman that he has secured a divorce from his wife whom she knows he is married to is not sufficient in itself to create a presumption of good faith on her part where there are no further facts and

circumstances that would lead her to believe the man is actually divorced.

In the case under consideration, the plaintiff did not rely upon the bare assertion of Funderburk that he had obtained a divorce from his wife, but, instead, upon the duly certified copy of the divorce decree that he presented to her when he proposed marriage, which certified copy is in the record.

There is not a scintilla of evidence in the record, unless we are to resort to conjecture as suggested by counsel for the defendant, to show that the plaintiff had any knowledge of the nullity of the purported divorce decree. To assume, as also suggested by counsel, that bad faith can be imputed to the plaintiff because on the face of the decree it shows it was rendered by the Twelfth Judicial District Court for the Parish of Avoyelles, could only result in the further assumption that the plaintiff was well versed in the law on this subject matter.

In the record we find the plaintiff's testimony that she had no inkling of the nullity of the divorce and the invalidity of her marriage until these proceedings were instituted is fully corroborated by other evidence revealing that immediately after the marriage she and the decedent returned to the Pineville home and from that day until the day of his death some 12 years later they continued to live there as man and wife, during which time she not only went by the name of Mrs. Henry Edward Fun-

derburk but was recognized and accepted as his legal and lawful wife throughout the community. She kept house for him, she nursed and cared for him, and she raised his children by his former marriage; and, although the defendant was at the time of the marriage approximately 19 years old, neither he nor any of his brothers or his sister, nor any of the friends of the family, one of whom, Ang F. Klumpp, witnessed the marriage ceremony, ever intimated to the plaintiff any doubt they might have entertained or any knowledge they might have possessed as to the invalidity of her marriage or any impediment thereto.

It is our conclusion, therefore, that the defendant has not only failed to sustain the burden of proving the plaintiff's bad faith, but that the overwhelming preponderance of the evidence establishes she was in good faith in contracting this marriage. Consequently she, as the putative wife, is entitled to half of all of the property acquired during the time she was married to the decedent.

There must be taken into consideration, also, the repairs that were made during the existence of the community to the separate property of the husband, used and enjoyed by them as a home, although the recompense due for such repairs is not based upon the actual amounts expended, as claimed by the plaintiff, but is limited to the enhanced value of the property resulting from such repairs and improvements as of the date of the dissolution of the

community. Article 2408 of the Revised Civil Code; Depas v. Riez, 2 La.Ann. 30; Succession of Boyer, 36 La.Ann. 506; Dillon v. Freville, 129 La. 1005, 57 So. 316; Succession of Ferguson, 146 La. 1010, 84 So. 338; Peters v. Klein, 161 La. 664, 109 So. 349; and Succession of Singer, 208 La. 463, 23 So.2d 184. While the plaintiff did prove during the trial the actual cost of some of the repairs and improvements made to the decedent's separate property at the expense of the community, there is nothing in the record to show the value of this property prior to these improvements or the enhanced value thereof at the time of the dissolution of the community and we will, therefore, non-suit her claim in this respect.

We now pass to her claim that the following movable property, listed on the inventory as belonging to the succession of the decedent, is her separate property and should be recognized as such and restored to her:

1. A living room suite consisting of an overstuffed davenport and two arm chairs, reddish brown in color, claimed to have been purchased by her prior to her marriage to the decedent.

2. (a) A Buick automobile, (b) a walnut bed room suite, (c) a night stand that is really a sewing cabinet, all claimed to have been donations intervivos from the decedent in the form of manual gifts.

3. The following articles that were purportedly purchased by her during her marriage with her own earnings: 1 cardboard storage cabinet for clothes; 1 9' x 12' brown wool rug; 1 small green throw rug; 2 small electric lamps for vanity dresser; 1 small 2-radiant gas heater; 1 walnut wood rocker. (She also listed in her petition a mahogany library table as falling into this category but testified on the witness stand that there had been a mistake made as to this table.)

We find no difficulty in concluding that the property listed under the first item above, the living room suite, was acquired by the plaintiff before her marriage to the decedent and, therefore, is her separate property. Both she and her son testified to this effect and they are corroborated by the defendant, although his testimony, indefinite, vague, and contradictory on this phase of the case, would seem to imply that his father later purchased the furniture from the plaintiff and her former husband.

Nor do we have any difficulty in reaching the conclusion that the property listed under the third item belongs to the community, although purchased by the plaintiff during the marriage with her own funds, since, according to her own testimony, these amounts constituted money earned while she was living with the decedent. Article 2402 of the Revised Civil Code; Prendergast v. Cassidy, 8 La.Ann. 96; Isaacson v. Mentz, 33 La.Ann. 595; Knight v. Kaufman, 105 La. 35, 29 So. 711; Succession of Manning, 107 La. 456, 31 So.

862; Houghton v. Hall, 177 La. 237, 148 So. 37; and Brownfield v. Southern Amusement Co., 196 La. 73, 74, 198 So. 656.

However, in determining the plaintiff's right to the property listed under the second item, we deem it necessary to first give a résumé of the law on the subject matter.

Under the Revised Civil Code, a husband can give his wife, when he has children by a former marriage, only that portion of his estate that he could give to a stranger (Article 1752; Succession of Byrnes, 206 La. 1026, 20 So.2d 301), and when such donation is in the form of a manual gift of corporeal movable effects, accompanied by a real delivery, it is not subject to any other formality. Article 1539; Succession of Hale, 26 La.Ann. 195; Succession of Zacharie, 119 La. 150, 43 So. 988; Succession of Housknecht, 135 La. 818, 66 So. 233, L.R.A.1915B, 396; Hurley v. Hurley, 146 La. 337, 83 So. 643; Succession of McBurney, 162 La. 758, 111 So. 86; Gibson v. Hearn, 164 La. 65, 113 So. 766; Faison v. Patout, 212 La. 37, 31 So. 2d 416. The burden of proof, however, rests upon the one claiming the donation. Succession of Zacharie, supra; Succession of Housknecht, supra; Succession of Rageur, 155 La. 97, 98 So. 853; Succession of McBurney, supra; and Faison v. Patout, supra. See, also, Articles 2277 and 2288 of the Revised Civil Code.

An analysis of the cases cited above in connection with Articles 1539 and

1752 of the Revised Civil Code will show that the proof required in such cases must be strong and convincing that it was the donor's intention to give the property.

In support of her claim to the property under Item No. 2, with the exception of the Buick automobile, we find in the record the plaintiff's bare statement, uncorroborated by any other fact or circumstance, that these articles were gifts from her husband. From this evidence we are unable to ascertain with any reasonable degree of certainty that these gifts were intended as donations to the wife, they being in reality articles needed and commonly used in the home for the benefit of the community.

As to the Buick automobile, however, the plaintiff has offered other witnesses in corroboration of her statement that this car was a gift from her husband. All of these witnesses testified with reference to conversations they had with the decedent either prior or subsequent to the time the car was purchased. While such testimony may be considered in deciding the intention of the donor, "Proof of that intention must be made to appear by the manual gift itself, and not by statement of conversations held with the donee before or after the gift." Succession of Housknecht, supra.

The plaintiff in relating to the court the circumstances under which the car was given to her said: "* * * that afternoon when he came home he told me he

had gotten me a surprise. I asked him what it was. He said, 'I cannot tell you. Wait until 5:00 o'clock, you will find out.' At 5:00 o'clock Mr. Lanier brought the Buick." Then, answering the question as to what the decedent had told her when the car was brought, she replied: "Just told me, 'I bought you a car, see. How do you like it?' "

This testimony in itself certainly does not show that the car was intended as a gift to the wife any more than if the decedent had come in and told her he had bought her as a surprise a Frigidaire, a washing machine, or some other movable effect that is needed and used by the community. The very testimony offered in corroboration of the plaintiff's version of this matter, in our opinion, does not throw any further light on the subject. In fact, in most of the instances in which the plaintiff's witnesses sought to corroborate her version of the matter, the husband and wife were using the car together. For example, Mrs. J. T. Walker testified that the plaintiff and decedent called her up one day and asked her to drive with them to Lake Arthur. On another occasion, the two drove over to visit Mr. and Mrs. H. B. Dodson and there showed them the car. Besides there is some countervailing evidence. There were two witnesses who testified they often heard the decedent refer to the car as his automobile; one was a man who had known the decedent for 20 years and who had worked in the

same shop with the decedent since 1938. The man who delivered the car to the house stated he had previously sold the decedent several cars and that when he delivered the car he did not hear the decedent make any statement to the plaintiff that the car was intended as a gift to her. In addition, the record shows the decedent not only bought the car in his own name but also insured it in his name as head and master of the community.

■ Under these facts and circumstances we do not think we would be justified in concluding that the car was intended as a donation to the wife within the meaning and contemplation of Article 1539 of the Revised Civil Code.

For the reasons assigned, the judgment of the lower court is annulled and set aside and it is now ordered, adjudged, and decreed, that there be judgment in favor of the plaintiff, Mrs. Jessie W. Funderburk, and against Victor Barnes Funderburk, executor of the succession of Edward Henry Funderburk, decreeing the plaintiff to be the putative wife of Edward Henry Funderburk, and, as such, entitled to half of all of the property acquired during the existence of the community, including the bank account and the movable effects listed in the inventory with the exception of the living room suite, consisting of an overstuffed davenport and two arm chairs, which is decreed to be the separate property of the plaintiff and ordered delivered to her, her claim for the improvements and

repairs made to the immovable property of the decedent being non-suited. All costs are to be paid by the succession of Edward Henry Funderburk.

PONDER, J., absent.