183 So.2d 457 (1966)
Succession of Frank CHOYCE.
No. 10511.
Court of Appeal of Louisiana, Second Circuit.
January 26, 1966.
Rehearings Denied March 1, 1966.
Writ Refused April 15, 1966.
E. W. Goetz, Jr., Shreveport, for Pauline C. Conaway.
Loret J. Ross, Shreveport, for Kaye F. Choyce.
Hussey & Moore, Shreveport, for Annie V. Choyce and her minor children.
Thomas B. Wilson, Bossier City, administrator.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
The Succession of Frank Choyce was opened January 23, 1964, in Bossier Parish by the filing of the petition of Thomas B. Wilson, an attorney, asking to be appointed administrator. The petition alleged that Frank Choyce, a domiciliary of Bossier Parish, died intestate on August 8, 1963; that he was survived by his widow Pauline Choyce Conaway and a daughter, Kaye Frances Choyce, both residents of California. The petition also alleged that Frank Choyce had married a second time without obtaining a divorce from Pauline.
Thereafter, a claim was made by Annie V. Craig Choyce that she was the sole surviving spouse of Frank Choyce, having been married to and lived with him for a period in excess of fifteen years. She likewise alleged her four minor children were decedent's sole heirs.
Following an unsuccessful attempt by Annie Choyce to have Mr. Wilson removed as administrator and to have herself appointed, the administrator filed a petition for declaratory judgment, praying for a judicial determination of the rights of the opposing parties. To this petition both parties and their minor children filed answers.
After trial the lower court rendered judgment recognizing Annie V. Craig Choyce as the sole surviving widow in community of Frank Choyce, and recognizing all five children (the one child of Pauline and the four of Annie) as legal heirs of Frank Choyce. Pauline Choyce Conaway appealed from that judgment and Annie answered, *458 asking the judgment be amended to tax the costs against appellant instead of against the Succession.
Since the lower court assigned no written reasons for its judgment we will give a resume of the salient facts as we find them. Decedent and the first wife, Pauline, were married in Marshall, Texas, on April 20, 1946. Of this marriage one child, Kaye Frances, was born in Texarkana, Arkansas, on March 5, 1947. Decedent deserted his first wife in Waskom, Texas, in December 1946. Pauline later, during 1947, moved to Shreveport to live with an aunt. Unable to locate her husband, she contacted the Red Cross and the Military Police located him at Barksdale Air Force Base in Bossier Parish and brought him to Pauline. She testified they discussed their marital problems and he stated he had filed suit for divorce and was not going to return to live with her. She then moved to California where she has since resided.
In the instant case there is no positive evidence of a divorce terminating the first marriage although Pauline admittedly stated in an application for marriage license in 1963 that she had been married but divorced. She testified that she had never received any notice of a divorce action nor been served with any citation. After she was advised she was not in fact divorced she re-married her second husband in 1964, after the death of Frank Choyce.
Decedent and the second wife, Annie, were married in Bossier City, Louisiana, on June 6, 1948, and of that marriage there are four minor children. Annie testified that at the time of her marriage to Choyce she had no knowledge of his previous marriage. Some nine years after the second marriage she was informed her husband had been married before and he exhibited some paper to her claiming he was divorced. However, she stated these papers were destroyed in a fire and she remembered no details about them. Frank and Annie lived in Bossier City from the date of their alleged marriage until his death.
Pauline and Frank Choyce having been legally married such marriage continued until dissolved by divorce, death or annulment. (La.C.C. art. 93.) There is no convincing evidence in the record of a divorce or an annulment. It is true Pauline was under a mistaken belief for many years her husband had divorced her. The second wife also thought Frank was divorced, but the only evidence in the record tending to prove such a divorce was some vague testimony by the second wife she saw some "papers" some nine years after her marriage which she assumed was a "divorce."
We find it unnecessary to indulge in any presumptions or to determine who has the burden of proof since we have experienced no difficulty in finding the marriage between Pauline and Frank Choyce was never dissolved by divorce. See Succession of Thomas, 144 La. 25, 80 So. 186 (1918).
We are aware of a line of cases in our own and other jurisdictions which have found it necessary, in order to determine a marital status, to rely on a presumption of the validity of a second marriage over a first marriage. Lands v. Equitable Life Assurance Society of United States, 239 La. 782, 120 So.2d 74 (1960); Succession of Primus (La.App. 1 Cir., 1961) 131 So.2d 319; Ellis v. Hayes (La.App. 2 Cir., 1964) 168 So.2d 885 (Presumption rebuttable); cf. McCaffrey v. Benson (New Orleans 1886) 38 La.Ann. 198 (No presumption of death). Nevertheless we find these cases inapposite to the instant case since we find from the evidence before us there has been no divorce.
We come next to the effect to be given to the second marriage. Since good faith of Annie appears to be conclusively shown, Louisiana Civil Code Articles 117-118 are controlling:
"Art. 117: The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
*459 "Art. 118: If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."
In resolving the question of the proper disposition of the property, admittedly acquired during the second or putative marriage, we must inquire into the good or bad faith of the husband. The only evidence on this point is that when Frank Choyce obtained his license to marry Annie he stated he had never been married; later, when confronted with the fact of his previous marriage he told Annie he had been married but was divorced. The first wife testified her husband had written to her in California in 1949 asking for money which she refused to send him and that he answered saying he had obtained a divorce. From these facts we conclude Frank Choyce was in bad faith when he contracted his marriage to Annie Choyce.
Commencing with the very early case of Patton v. Cities of Philadelphia and New Orleans, 1 La.Ann. 98 (1846) and continuing to the present time the jurisprudence in this state has been, as stated in Ray v. Knox, 164 La. 193, 113 So. 814 (1927) as follows:
"And the rule was correctly laid down in Patton v. Cities of Philadelphia and New Orleans, 1 La.Ann. 98, and has ever since been followed, that where a man marries, and afterwards contracts a second marriage without the first having been dissolved, the community property acquired during the coexistence of said two marriages belongs exclusively and in equal shares to said two wives as long as the second wife is in good faith, i. e., as long as she has no certain knowledge of the existence of the first marriage, and the bigamous husband has no share whatever in said property. Cf. R.C.C. art. 117."
See also Succession of Fields, 222 La. 310, 62 So.2d 495 (1952); Texas Co. v. Stewart (La.App.Orl.1958, cert. denied) 101 So.2d 222 and Prince v. Hopson, 230 La. 575, 89 So.2d 128 (1956).
For the reasons assigned the judgment of the lower court is reversed and Pauline Choyce Conaway is decreed to be the owner in indivision of one-half of the community of acquets and gains acquired during the coexistence of the two marriages and Annie Craig Choyce is declared to the owner of the remaining one-half of said community property.
All costs of these proceedings are to be paid by the Succession of Frank Choyce.
Reversed and rendered.