381 So.2d 963 (1980)
Phyllis Reynolds HANLEY
v.
James J. HANLEY, Jr.
No. 10782.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1980.
*964 Bruce W. Dinwiddie, Metairie, for defendant-appellee.
Robert T. Garrity, Jr., Metairie, for plaintiff-appellant.
Before GULOTTA, SCHOTT and GARRISON, JJ.
SCHOTT, Judge.
Mrs. Phyllis Reynolds Hanley brought this suit against her husband James J. Hanley, Jr., for a separation on the ground that he abandoned her on March 10, 1978. He reconvened for a divorce on the ground that she committed adultery on numerous occasions with one Larry Coste. Alternatively he sought a separation because her affair with Coste constituted cruel treatment. From a judgment of divorce in his favor she has appealed. He has answered the appeal seeking custody of their three young children on the ground that she is unfit to be their custodian. The principal issue on appeal is whether the evidence is sufficient to support the judgment of divorce based on adultery.
Mr. Hanley testified as follows: For several years he thought Coste's relationship with his wife was simply a friendship, but it eventually became evident to him that it was more. He insisted that she discontinue the relationship, but it continued.
David J. Sterling, Jr., a private investigator, testified as follows: On Saturday, June 17, 1978, he set up a surveillance on Mrs. Hanley's home beginning at 9 A.M. At 1 P.M. Coste arrived, stayed an hour, and left. At 2:20 Coste returned and at 2:35 he and Mrs. Hanley left in his car. Sterling returned to Mrs. Hanley's home at 6:30 and found Coste's car in the driveway and one of Mrs. Hanley's cars gone. The following morning at about 6 A.M. Sterling returned to find her automobile still gone, and upon re-establishing a surveillance of the residence he saw Mrs. Hanley and Coste arrive in her car at about 6:30 A.M. At 7:30 A.M. Coste left in his car.
The Hanley's next door neighbor, Mrs. Ethel Zeringue, gave the following testimony: In January, 1977, she attended a supper dance with Mrs. Hanley and Coste. They danced, he put his arms around her, and she called him baby. For six months prior to the Hanleys' separation Coste would be at their house nearly every day at all different hours. "He just came as if he lived next door." He would often come when Mr. Hanley was not at home and Mrs. Hanley on several occasions told her that Coste had come for lunch with her. After the separation in March until the trial in October Coste was there so much that she "thought he was living next door." He came every day and "His car would be there at night all the time." Zeringue would stay up until two-thirty and Coste would still be there and she "didn't see any lights." On cross examination, however, Zeringue stated that she would hear Coste leaving at two or three in the morning.
Mrs. Hanley admitted that she had gone out socially with Coste but always with her husband's approval. She also admitted having seen Coste often but always for the purpose of chauffering her father or children. She denied having ever been in her home alone with Coste and insisted that other adults were always present.
Coste testified that he was never with Mrs. Hanley outside of the presence of another adult since April, 1978, when a temporary custody hearing was held. He produced his calendar to show that he was in Mobile, Alabama, on June 17, 1978, until he returned home between 3 P.M. and 3:30 P.M., contradicting Investigator Sterling's testimony. As to the presence of his automobile at Mrs. Hanley's house, he claimed that he was required to travel often and frequently used a Buick which was in Mrs. Hanley's possession but belonged to her father. This was always done with the father's permission and on those occasions he would leave his automobile at Mrs. Hanley's.
*965 Mrs. Hanley also offered some evidence to show that her brother had an automobile similar in appearance to Coste's which was often parked at her house. At one point in her testimony Zeringue demonstrated some confusion over her identification of the car as Coste's as opposed to the brother's.
We have detailed this evidence because it readily demonstrates why we are reluctant to affirm the judgment, considering the operative legal principles. Proof of adultery based solely on circumstantial evidence must be so convincing that it will exclude any other reasonable hypothesis but that the act was committed. "The mere fact that a man and woman spend time together alone does not necessarily mean that they are engaged in illicit sex." Coleman v. Coleman, 352 So.2d 710 (La.App. 4th Cir. 1977).
The evidence in this case is similar to that which was produced in Soroe v. Soroe, 334 So.2d 543 (La.App. 4th Cir. 1976) and which was found to be insufficient to support a judgment based on adultery. In that case the court noted that speculation, conjecture, mere possibility, and even unsupported probability, are not sufficient to support a judgment.
This case is complicated, however, by the omission from the record of the transcript of testimony taken in April, 1978, shortly after the parties separated. While Mrs. Hanley was on the stand some reference was made to her previous testimony and that it was unnecessary for her to repeat it. The trial judge stated that he would consider that previous testimony if agreed to by counsel, and both agreed. The record shows that the previous testimony was unavailable because of a "faulty recording." When Coste was on the stand both parties refrained from questioning him on his relationship with Mrs. Hanley before the hearing. In fact, Coste testified that he was advised by his attorney after the hearing that he should always have an adult in presence at the Hanley household.
A minute entry on the custody hearing indicates that the trial judge heard testimony from the three Hanley children and one Paul Wallace Williams, who did not testify on the merits. Apparently, there was much evidence concerning the relationship between Mrs. Hanley and Coste before the separation which is not available to us.
In Succession of Walker, 288 So.2d 328 (La.1974), the court considered appellant's motion to remand the case to the district court and the record on appeal contained only the deposition of one witness but omitted the transcribed testimony of the witnesses who testified at the trial. After recognizing that the appellant has the burden of implementing the provisions of C.C.P. Art. 2131 with respect to the furnishing of a statement or narrative of facts, the court concluded:
"The jurisprudence is uniform that, where there are factual issues involved and the record on appeal contains neither the transcript of the testimony nor an agreed statement of facts entered into between the parties or given by the trial judge, there is nothing for appellate review."
The Supreme Court did not question the conclusion of the Court of Appeal that where the record contains no transcript, no agreed statement of facts signed by opposing counsel and no narrative of facts by the trial judge, the judgment of the trial court is presumed to be supported by competent evidence. The same presumption was applied by the courts in Bourgeois v. Daigle, 340 So.2d 1063 (La.App. 1st Cir. 1976), Vaughan v. Fair, 337 So.2d 675 (La.App. 3rd Cir. 1976), Hutcherson v. Welch, 316 So.2d 144 (La.App. 2nd Cir. 1975), Hill v. Smith, 284 So.2d 374 (La.App. 2nd Cir. 1973).
Appellant is in the position of having the burden to demonstrate error in the judgment of the trial court. For that reason the burden is on appellant to comply with Art. 2131 and to have a complete record before the Court of Appeal. Traylor v. Traylor, 337 So.2d 922 (La.App. 3rd Cir. 1976), where there is no transcript of testimony or narrative the appeal is subject to dismissal because the court is unable to decide the correctness of the judgment. *966 Ernest Joubert Company v. Tatum, 332 So.2d 553 (La.App. 4th Cir. 1976), Landry v. Landry, 323 So.2d 507 (La.App. 4th Cir. 1975).
Thus, we have concluded that the missing testimony taken at the trial of the rule is presumed to support the trial judge's conclusion that Mrs. Hanley committed adultery on numerous occasions entitling Mr. Hanley to a judgment of divorce.
As to the answer to the appeal by Mr. Hanley, the same presumption applies that the missing testimony supports that portion of the judgment concerning custody. Considering only the testimony produced at the trial on the merits there is nothing to demonstrate any abuse of the trial court's discretion in the award of custody to Mrs. Hanley. The evidence at the trial does not indicate that the acts of adultery took place within sight or knowledge of the children, or that Mrs. Hanley's relationship with Coste detracted from her ability to care for the children. We presume that the missing testimony taken at the trial of the rule likewise supports the trial judge's conclusion on custody.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.