688 So.2d 673 (1997)
Antoine M. SAACKS, Jr.
v.
Marilyn A. SAACKS.
No. 96-CA-736.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 1997.
*674 Lanny R. Zatzkis, Karen D. McCarthy, Law Office of Lanny R. Zatzkis, New Orleans, for Plaintiff/Appellant, Antoine M. Saacks, Jr.
James A. McCann, New Orleans, for Defendant/Appellee, Marilyn A. Saacks.
Before BOWES, GRISBAUM and WICKER, JJ.
BOWES, Judge.
Appellant, Antoine Saacks Jr., appeals a judgment of the district court finding that appellee Marilyn Saacks was a good faith putative spouse. We affirm.

FACTS
Antoine Saacks Jr. filed for divorce from Marilyn A. Saacks in September of 1993. The petition stated that the couple had been married on August 2, 1969, and had physically separated. On June 13, 1994 a judgement of divorce was granted. On August 25, 1993, appellant filed a petition for partition of community property. On October 3, 1995, appellant filed a motion to dismiss the partition proceedings, averring that since the filing of the partition, evidence had come to light that Mrs. Saacks was married prior to her marriage to Saacks, but not divorced. Saacks alleged that Mrs. Saacks was not in good faith in marrying him, and that as a result, the civil effects of marriage, including a community of acquets and gains, did not flow to her. In effect, a community did not exist. A hearing was held on this motion, and following the taking of evidence and testimony, the court denied the motion to dismiss the petition to partition. From this judgment plaintiff appeals.

EVIDENCE AND TESTIMONY
At the outset, we note that appellant designated the record for appeal. As a result, only a portion of the transcript has been sent to this Court for review, that of the cross-examination of Mrs. Saacks. In the transcript, appellee stated that she had been married first to Donald Wynn, from whom she was divorced, and on the second occasion to Saacks. She admitted that she had also been married to Ronald DeFusco:
... but it was in Mexico, and not recognized in the United States, so it's not a legal marriage.
There was a marriage ceremony, but it was in Spanish and has since been "extracted from that record by Mr. DeFusco."
Q. What does that mean, extracted, taken out of the record, or
A. Torn out the page is what he had done.
Q. Does that make the marriage go away?
A. There was no marriage. We were married in Mexico. We never established a domicile in the State of Louisiana, or any other state. After the marriage he went back to New York, and I went to New Orleans. He came in once or twice after that, and that was it. I have friends who can testify to that.
When presented with a registry card registering a marriage between herself and Mr. DeFusco, and a marriage license, she was unable to read either document because they were in Spanish. In portions of a deposition read into the record, Mrs. Saacks again stated that she was married in Mexico "which was not legal in the United States and was not recognized." In his extensive and well written reasons for judgment, the learned trial judge found that it was unnecessary to determine whether Mrs. Saacks' marriage in *675 Mexico was actually valid or not due to his finding that she entered into her marriage with Antoine Saacks in good faith and with an honest and reasonable belief that there existed no legal impediment to marry. Among other things, the court stated:
Marilyn Saacks' demeanor and testimony during trial and at a deposition reflected her confusion regarding the entire marriage in Mexico, more specifically, that Marilyn Saacks was more likely than not convinced that either the marriage was invalid and not recognized in the United States, or that by "extraction" the marriage could be invalidated. This Court does not believe that the marriage in Mexico was a union which was ever acknowledged as being legitimate by Marilyn Saacks.

ASSIGNMENTS OF ERROR
On appeal, Antoine Saacks urges that it was error for the trial court
(1) to find that Mrs. Saacks was a putative spouse;
(2) to find that she was in good faith in contracting her marriage to him;
(3) to fail to address whether the Mexican marriage was valid;
(4) to exclude the Mexican marriage certificate and registration card; and
(5) to consider the actions of appellant in determining whether or not Mrs. Saacks was in good faith.

ANALYSIS
There is some confusion as to what exhibits were and were not admitted into evidence. In the portion of the transcript designated by appellant, we note that there was a stipulation by Mrs. Saacks to the marriage license and certificate, and that Mrs. Saacks was cross examined on those documents at the trial.
In the transcript available on appeal, the only exhibits which were objected to by plaintiff were two smallpox vaccination certificates and a letter purportedly written by appellee. Appellee objected as the documents were not listed in the pretrial order. The court allowed admission of the letter, but delayed its ruling on admissibility of the cards until the end of trial; however, the transcript ended there. We note that the minutes indicate that objections to plaintiff's exhibit number six, described in the minutes as a marriage certificate and three photos, were sustained at the close of trial. It is, therefore, not clear to this Court which exhibits were and were not admitted.
Appellant is in the position of having the burden to demonstrate error in the judgment of the trial court. For that reason the burden is on appellant to comply with La. C.C.P. art. 2131 and to have a complete record before the court of appeal. Traylor v. Traylor, 337 So.2d 922 (La.App. 3 Cir.1976); Hanley v. Hanley, 381 So.2d 963 (La.App. 4 Cir.1980). Absent such a complete record, we cannot say that the trial judge erred since we cannot say, with certainty, which exhibits were finally admitted and considered by him. Nevertheless, appellant had the opportunity to cross-examine the appellee on the documents; therefore, it appears that any error in admission of the documents was harmless.

PUTATIVE SPOUSE
The primary issue in this case is whether or not Mrs. Saacks is entitled to a share of the community formerly existing between herself and her husband. Saacks contends that his marriage to Mrs. Saacks was null because she failed to divorce Ronald DeFusco; therefore, the civil effects of the marriage, i.e., the right to share in community property established by a valid marriage, did not flow to her. According to La. C.C. art. 94:
A marriage is absolutely null when contracted without a marriage ceremony, by procuration, or in violation of an impediment. A judicial declaration of nullity is not required, but an action to recognize the nullity may be brought by any interested person.
La. C.C. art. 96 nevertheless allows civil effects to flow in an absolutely null marriage, under certain circumstances:
An absolutely null marriage nevertheless produces civil effects in favor of a party *676 who contracted it in good faith for as long as that party remains in good faith.
When the cause of the nullity is one party's prior undissolved marriage, the civil effects continue in favor of the other party, regardless of whether the latter remains in good faith, until the marriage is pronounced null or the latter party contracts a valid marriage.
The good faith required for putative spouse status has been defined as an honest and reasonable belief that the marriage was valid and that no legal impediment to it existed. Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502 (1949); Gathright v. Smith, 368 So.2d 679 (La.1978); Rebouche v. Anderson, 505 So.2d 808 (La.App. 2 Cir. 1987).
Good faith consists of being ignorant of the cause which prevents the formation of the marriage, or being ignorant of the defects in the celebration which caused the nullity.
The question of whether a party is in good faith is subjective and depends on all the circumstances presented in any given case. Although the good faith analysis incorporates the objective elements of reasonableness, the inquiry is essentially a subjective one.
If it is shown that a prior marriage has not been dissolved, the burden of proving good faith is on the party whose marriage is under attack.
Determination of whether good faith is present is a factual question and the finding of the trial judge is entitled to great weight. That determination will not be overturned unless it is shown to be clearly wrong. Any doubt as to the existence of good faith is to be resolved in favor of a finding of good faith. Rebouche, supra. [Citations omitted].
See also In re Succession of Gordon, 461 So.2d 357 (La.App. 2 Cir.1984). The spouse who is shown to have been a party to a previous undissolved marriage bears the burden of proving that he contracted his second marriage in good faith. Gathright v. Smith, 368 So.2d 679 (La.1978); In re Succession of Gordon, supra. Good faith belief may arise from an error of law, as well as of fact. Succession of Pigg, 228 La. 799, 84 So.2d 196 (1955); Funderburk, supra.
In the present case, the trial judge found that while Marilyn Saacks was educated and knowledgeable, and had previously been divorced. However, her experience had been in the United States and had provided no experience or knowledge of Mexican law. The court stated:
... this Court believed that Marilyn Saacks' responses indicate confusion regarding the validity of the Mexican marriage rather than lies or deception.
It was the observation of the court that Mrs. Saacks appeared confused and was not trying to hide any information.
Furthermore, Marilyn Saacks and Antoine Saacks both admitted discussing the Mexican Marriage prior to their marriage in 1969. Antoine Saacks's awareness of the marriage in Mexico and failure to inform Marilyn Saacks of any belief that it would be necessary for her to get a divorce in the United States only reinforced Marilyn Saacks' belief that the marriage in Mexico was not recognized in the United States...
(Reasons for judgment).
The trial court also found that their mutual behavior over the years illustrated a good faith belief that their marriage was contracted without impediments. The court recognized that the good faith of Antoine Saacks was irrelevant, but that his attitude and actions reflected Mrs. Saacks' understanding of, and belief regarding the Mexican marriage. The court found that both parties were operating in good faith, but under an error of law.
In essence, the trial court found Mrs. Saacks to be a credible witness, a finding which is entitled to great weight and should not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989), and its progeny. Nothing in the designated record contradicts this finding of the trial court, and the testimony taken at the trial is presumed to support the trial judge's conclusion. See Hanley, supra.
*677 The "factors" enumerated in Rebouche are not, as appellant would have us hold, mandatory considerations, but were rather the basis upon which the Second Circuit based its finding of the "reasonable belief" (of the bigamous spouse). The instant case presents its own individual circumstances upon which the trial judge made his finding, and we find no manifest error in his conclusion. Given this determination of good faith, it was unnecessary for the trial court to determine whether the Mexican marriage was actually valid.[1]

DECREE
For the foregoing reasons, the judgment is affirmed. Costs are taxed to appellant.
AFFIRMED.
NOTES
[1] It appears, from the finding of the trial court that the parties operated under an error of law, that the trial judge did find the Mexican marriage to be valid. However this finding was not specifically pronounced.