] í DOUCET, Chief Judge.
The Defendant, Roger Randolph Tho-mason, appeals the trial court’s determination that, although the marriage was invalid, Barbara Ann Hughes Thomason was in good faith and entitled to the civil effects of marriage as a putative spouse.
Barbara Thomason filed for a divorce in December 1998. In his answer to the petition for divorce, Mr. Thomason stated that no marriage had taken place. A hearing was held on December 6, 1999, at which the following facts were brought to light. The parties met in a sanitarium where both were being treated for tuberculosis. After being released they continued to see each other and on April 5, 1958, Roger asked Barbara to go to Mississippi with him to get married. They went to the courthouse in Port Gibson, Mississippi *555 and obtained a marriage license. At this point the parties’ version of events diverge. Barbara testified that they then went to a house and spoke to a man. Although no ceremony was held, she thought this was the justice of the peace and that she was married to Roger. They left the house and checked into a hotel together. She testified that Roger gave her a wedding ring. The next day they returned to Louisiana.
Roger disagreed with this account. At the hearing, he testified that after getting the license they were unable to find a justice of the peace; that they never went to anyone’s house but simply checked into a hotel. He testified that he knew no marriage had taken place. It is undisputed that from that time until Barbara left the matrimonial domicile, the two held themselves out as married.
|20n December 6, 1999, the court held a hearing to determine the issues of marriage and putative spouse status. After hearing the evidence of both parties. The trial court made the following findings:
From the testimony of both parties, the Court has determined that even though Barbara Hughes Thomason “believed” that they were married on April 5, 1958, in reality, they were not. It is this Court’s opinion that Roger Randolph Thomason took advantage of Barbara’s ignorance about marriage and deliberately did not say that they were not married after leaving the home of the justice of the peace and never told Barbara. Although Roger testified that one time during the marriage, he told Barbara that they were not legally married, this Court does not find his testimony to be credible.
[[Image here]]
This Court has determined that Barbara Ann Hughes Thomason did not know during all the years she was together with Roger that her marriage was defective in the eyes of the law. This does not mean that she is to blame for the marriage not being valid, only that she trusted and loved someone so completely that she never thought they would be deceitful to her.
The court rendered judgment finding that the two were never validly married but that Barbara was in good faith until Roger filed his answer to her petition for divorce and was, therefore, “entitled to the civil effects of the marriage as a putative spouse.” Roger appeals.
GOOD FAITH
Roger’s first two assignments of error address the existence of good faith on the part of Barbara and the date on which her good faith, if any, ended.
“Good faith” is defined as an honest and reasonable belief that the marriage was valid and that no legal impediment to it existed. Saacks v. Saacks, 96-736 (La.App. 5 Cir. 1/28/97), 688 So.2d 673. “Good faith” consists of being ignorant of the cause which prevents the formation of the marriage, or being ignorant of the defects in the celebration which caused the nullity. Saacks v. Saacks, supra; Rebouche v. Anderson, 505 So.2d 808 (La.App. 2 Cir.1987), writ denied, 507 So.2d 228 (La.1987). The question of whether a party is in good faith is subjective, and depends on all the circumstances present in a given case. Saacks v. Saacks, supra; In Re Succession of Gordon, 461 So.2d 357 (La.App. 2 Cir.1984), unit denied, 464 So.2d 319 (La.1985). Although the good faith analysis test incorporates the objective elements of reasonableness, the inquiry is essentially a subjective one. Saacks v. Saacks, supra; Rebouche v. Anderson, supra.
Alfonso v. Alfonso, 99-261, p. 5 (La.App. 5 Cir. 7/27/99); 739 So.2d 946, 948-49.
Roger testified that because they never found a justice of the peace and never went through a marriage ceremony, Barbara had to know that they were not married. Barbara testified that she thought they were married when they signed the license and saw the man she *556 thought was a justice of the peace. Roger further argues that any good faith belief Barbara had in the validity of the marriage ended when he told her they were not really married shortly before their first child was born. He testified that he told her because he thought they should get married to legitimate the child, but that she did not want to hear it. Barbara testified that the validity of the marriage was never brought into question until Roger filed his answer to the petition.
The determination of whether good faith is present is a factual question and the finding of the trial judge is entitled to great weight on appeal. That factual determination will not be overturned unless it is shown to be clearly wrong. Any doubt as to the existence of good faith is to be resolved in favor of a finding of good faith.
Id. at p. 5; 739 So.2d at 949.
In this case, the trial court apparently based its determination on a credibility evaluation, accepting Barbara’s testimony over that of Roger.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a | reasonable factfinder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989) (citations omitted).
In this case, it was not Barbara’s testimony which was inconsistent, but Roger’s. Throughout his testimony instances of obvious inconsistencies with his deposition testimony were pointed out. Under the circumstances, his credibility is far more questionable than that of Barbara. Therefore, we find no error in the trial court’s decision to credit Barbara’s testimony. We further find no manifest error in his decision to find that Barbara was in good faith and entitled to the civil benefits of marriage as a putative spouse.
END DATE OF THE COMMUNITY REGIME
Roger further contends that even if Barbara was in good faith until he filed his answer, the trial judge erred in ordering that the community regime be ended retroactive to the date the Defendant filed his answer, that is the date the trial court found that good faith ended. Roger argues that the law requires that the community regime be terminated retroactive to the date of filing the petition for divorce.
La.Civ.Code art. 159 provides that:
A judgment of divorce terminates a community property regime retroactively to the date of filing of the petition in the action in which the judgment of divorce is rendered. The retroactive termination of the community shall be without prejudice to rights of third parties validly acquired in the interim between the filing of the petition and recordation of the judgment.
| ^However, in this case there will be no judgment of divorce since there was no marriage. The petition for divorce is moot. La. Civ. Code art. 96 provides in pertinent part that: “An absolutely null marriage nevertheless produces civil effects in favor of a party who contracted it in good faith for as long as that party remains in good faith.” We agree with the trial court that Barbara remained in good faith until *557 Roger filed his answer to her petition on April 20, 1999. Therefore, the court correctly found that Barbara continued to be entitled to the civil effects of marriage until that date.
PUTATIVE SPOUSE STATUS FOR ROGER THOMASON
Finally, Roger contends that the court found him also to be in good faith and that, as a result, the civil effects of marriage should be extended to him as well. The Defendant misreads the court’s judgment. The court, both in its reasons for judgment and in the judgment itself stated that “the actions of both parties constituted good faith.” However, a full reading of the reasons makes it clear that the trial court considered that the actions of both parties showed that Barbara was in good faith. The trial judge made no finding that Roger was in good faith. In fact, his findings of fact make it clear that Roger was not in good faith and knew from the beginning that the marriage was not valid. He states, in his written reasons, that: “Roger Randolph Thomason took advantage of Barbara’s ignorance about marriage and deliberately did not say that they were not married after leaving the home of the justice of the peace. Roger knew when leaving, that the marriage license was not filed (sic) out by the justice of the peace and never told Barbara.” Accordingly, the trial court correctly declined to extend the civil effects of marriage to Roger.
^CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by Roger Thomason.
AFFIRMED.